# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| **DR. PETER W. BICKEL, OD**  Plaintiff,  v.  **THE DELAWARE AIR NATIONAL GUARD;** Major General Carol A. Timmons, in her official capacity as The Adjutant General of the Delaware National Guard,  and  **THE UNITED STATES DEPARTMENT OF DEFENSE;** James N. Mattis, in his official capacity as United States Secretary of Defense,  Defendants | CASE NO. 2:18-CV-119  JUDGE _____  **COMPLAINT FOR INJUNCTIVE RELIEF** |

Plaintiff Peter W. Bickel ("Bickel"), for his verified complaint against Defendants The Delaware Air National Guard, Major General Carol A. Timmons, in her official capacity as The Adjutant General of the Delaware National Guard ("DE ANG") and The United States Department of Defense, James N. Mattis, in his official capacity as United States Secretary of Defense ("DoD")(collectively, DoD and DE ANG are "Defendants") states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Bickel is an Ohio licensed doctor of optometry whose residence is in the Eastern Division of the United States District Court for the Southern District of Ohio. Bickel is currently a Colonel in the Delaware Air National Guard and serves as a reserve of the Air Force.

2. The DoD is an executive branch department of the United States government charged with providing and controlling security clearances issued to military personnel. DoD is headquartered at the Pentagon in Arlington, Virginia.

3. The DE ANG is a federally recognized state organization and instrumentality of the state of Delaware whose headquarters are in New Castle, Delaware. In her official capacity, Major General Timmons is The Adjutant General ("TAG") of the National Guard of the state of Delaware who has overall authority and control of the DE ANG, among other duties. DE ANG is a Reserve Component of the Armed Forces of the United States.

4. This Court has subject matter jurisdiction over this case because Bickel is seeking injunctive relief against the DoD to enjoin the suspension and possible revocation of his security clearance under DoD 5200.2-R and the DE ANG is an instrumentality of the state of Delaware whose actions violated Bickel's constitutional rights which Bickel seeks to prospectively enjoin.

5. Venue is proper in this Court because not all of the Defendants reside in the same judicial district and substantial acts giving rise to Bickel's claims occurred in Ohio.

## UNDERLYING FACTS

6. Bickel has served almost 30 years in various, and increasingly responsible, leadership positions in the Air National Guard and as a reserve of the Air Force.

7. In fact, on or about January 2009 through January 2011, Bickel was assigned as the Director of Guard and Reserve Health at the Uniformed Services University of the Health

Sciences ("USUHS") in Bethesda, Maryland.  The Director position was created specifically for Bickel.  Bickel reported to the USUHS's President, Charles Rice, who later became the Assistant Secretary of Defense for Health Affairs.  President Rice was responsible for Bickel's Officer Performance Reports ("OPR") and Bickel's OPRs only included outstanding comments.  Bickel was authorized to telecommute during this assignment.

8. As a result of federal budgetary constraints, between January 2011 and January 2015, Bickel was in the Individual Mobilization Augmentee program with duty at Andrews Air Force Base.  During this time, Bickel applied for multiple positions that ultimately resulted in his application to the DE ANG as the Medical Group Commander.

9. Initially, the DE ANG Medical Group Command billet was intended to be staffed by a full-time DE ANG employee and to be filled by Lieutenant Colonel Robin "Michael" Pollock ("Lt. Col. Pollock"), the DE ANG's 166th Airlift Wing's (the "Wing") Medical Group's Medical Administrative Officer.  However, for various reasons, Lt. Col. Pollock could not fill the position and it was offered to Bickel.

10. Colonel Donald Bevis ("Bevis"), the then Wing Vice Commander, formally offered the position to Bickel in the Fall of 2014.  Upon information and belief, Bickel's selection as DE ANG Medical Group Commander was because of his mastery of medical operations and Air Force medical readiness requirements as well as his knowledge of joint medical operations in a dynamic environment.  Bickel's first official day as the Wing's Medical Group Commander was January 15, 2015.

11. In order to accomplish his duties as the Wing's Medical Group Commander and because the Medical Group's readiness evaluation numbers, upon information and belief, needed significant improvement, Bickel wanted to engage his part- and full-time staff frequently by text,

telephone and electronic mail. Bickel inquired about the ability to telecommute as he did at USUHS and he was told that telecommuting was a practice employed by DE ANG subject to supervisory direction and the applicable regulatory procedures.

12. Air National Guard Instruction 36-8001 ("ANGI") prescribes certain procedures and forms for use when telecommuting. Although Bickel completed the Air National Guard Telecommuting Work Agreement and the Air National Guard Telecommuting Supervisor and Telecommuter Checklist, Bevis orally approved Bickel's request to report his time as Bickel had employed at USUHS, recording and reporting telecommute time in complete days.

13. Bickel never telecommuted as a substitute for drill attendance. For telecommute time, Bickel used his approved spreadsheets, submitting them at each drill, although the full-time commander support staff often advised that there was no budget for reimbursement. As a result, Bickel's telecommute time accumulated, unpaid, and was re-submitted when money was available. Bickel was randomly reimbursed for his telecommute time.

14. Bevis left Wing command in or about August 2016 and was replaced by Colonel Robert E. Culcasi ("Culcasi"). Notwithstanding that Bickel's telecommuting improved the readiness of the Medical Group, Culcasi halted all telecommuting reimbursement when he assumed command of the Wing. However, Culcasi did permit Bickel's telecommuting reimbursements that had previously been submitted.

15. At the time Culcasi halted telecommuting, Bickel had accumulated, uncompensated telecommute time. Culcasi asked to review that time which Bickel submitted through the commander support staff although Culcasi has advised Bickel he never received the information. Bickel was not properly paid for this telecommute time nor has he submitted telecommute time after August, 2016.

16. In or about July 2017, Culcasi initiated a Command Directed Investigation ("CDI") as a result of an anonymous complaint filed with the Air Force Inspector General. Although, upon information and belief, Bickel was not the target of the anonymous complaint but a potential witness, the CDI included a review of Bickel's telecommute time and alleged improper transportation to and from work during his time at the Wing. In July 2017, Bickel was assigned a military defense attorney JAG officer to assist him with the CDI.

17. In or about early August 2017, Bickel and Culcasi met to discuss force management and Culcasi's desire to have Bickel remain Medical Group Commander until at least June 2018. There was no discussion of the CDI or the results of the CDI at that time.

18. In or about September 2017, Bickel was asked to meet with Culcasi and Lieutenant Colonel Jonthan Wasden ("Wasden"), the Wing JAG Officer. Bickel was not represented by counsel at this September meeting, nor advised in advance of the need for such representation. However, before the meeting Bickel conferred with his assigned JAG counsel who advised that it was not necessary for assigned JAG counsel to attend because it was likely that an apology for the CDI was going to be offered. Instead, Wasden delivered two letters of reprimand ("LOR") to Bickel, the first LORs of his entire military career. Although Bickel signed an acknowledgement for the receipt of the LORs, he advised Culcasi and Wasden that he denied any wrong-doing.

19. Culcasi, without providing any more documentation than the LORs, advised Bickel that he had three days to submit a rebuttal to the LORs. Alternatively, through his assigned JAG counsel, Bickel was advised that Wasden said that Bickel could retire to avoid any negative implications resulting from the LORs.

20. Bickel consulted his assigned JAG counsel regarding rebuttal to the LORs. The assigned JAG counsel advised Bickel that, regardless of the reasonableness and adequacy of any rebuttal submitted, Wasden had informed the assigned JAG counsel, to whom he reported, that efforts to rebut the LORs would be futile.

21. Before returning to Ohio, Bickel met with Culcasi and the 166th Air Wing Vice Commander, Colonel Trevor Fulmer ("Fulmer") to advise them of what Bickel's assigned JAG counsel had told him about Wasden's statements. Bickel advised he would no longer work with assigned JAG counsel and Fulmer advised that new counsel would be provided. Additionally, Bickel requested and was granted an extension to November 2017 to submit rebuttals to the LORs. Furthermore, Culcasi told Bickel that he believed and understood Bickel's position with respect to the LORs.

22. Notwithstanding Fulmer's statement, on or about September 20, 2017, Culcasi, by electronic mail, told Bickel that it was Bickel's responsibility to obtain new assigned JAG counsel. Further, notwithstanding his previous agreement, Culcasi arbitrarily advised Bickel that he must rebut the LORs by September 29, 2017.

23. As a result of the circumstances surrounding the LORs, Bickel engaged independent, outside counsel.

24. Thereafter, and without permitting the originally agreed submission of rebuttal to the LORs, Culcasi formally relieved Bickel of his command and Wasden advised Bickel of DE ANG's initiating the process of convening an Administrative Board of Officers procedure to withdraw Bickel's federal recognition. Also, Wasden has advised of DE ANG's intent to pursue the suspension and ultimate revocation of Bickel's security clearance. Finally, on or about January 10, 2018, DE ANG notified Bickel of DE ANG's intent to recoup amounts paid to

Bickel pursuant to the previously approved telecommuting time. In early February 2018, Bickel discovered that access to his military electronic mail account had been denied. All of these actions were taken against Bickel without affording Bickel his constitutional right to due process under the law and in violation of various regulations, including, but not limited to, Bickel's right to receive a Statement of Reasons ("SOR") related to the potential attempt to suspend or revoke Bickel's security clearance, the failure to provide detailed documentation of the basis for the CDI and, lacking due process, the creation of an unfavorable information file ("UIF") that includes copies of the LORs.

25. The Wing's Inspector General told Bickel that his denial of access to his military electronic mail account was a result of the Wing's efforts to suspend his security clearance.

26. Bickel has taken appropriate steps to exhaust the intra-service remedies that are otherwise available by appealing all of the improper acts of DE ANG. Yet, DE ANG's actions set forth in paragraphs 24 and 25 above, have been taken without the benefit of a resolution of the intra-service remedies.

27. To mitigate against the failure of DE ANG to afford Bickel his due process rights, he has made multiple efforts to find new military assignments in Ohio, Indiana and elsewhere, but such efforts have been unsuccessful. Upon information and belief Bickel's UIF has impacted his efforts to find new military assignments. In fact, DE ANG has taken affirmative steps to foreclose any ability for Bickel to access his military records needed to defend himself and fulfil his service obligations based on the LORs, the defense of which Bickel has been denied.

28. Also, because of the UIF which is based on LORs the defense of which Bickel was denied due process and if Bickel's security clearance is improperly suspended or revoked, Bickel's license to practice optometry could be suspended or revoked.

## COUNT ONE – DE ANG
## (PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)

29. Bickel hereby incorporates each and every paragraph above as if set forth fully herein.

30. Preliminary and permanent injunctive relief is proper in this case pursuant to 42 U.S.C. § 1983 because DE ANG has deprived Bickel of his constitutional rights of due process as set forth above.

31. Preliminary and permanent injunctive relief is proper to enjoin DE ANG from continuing to deny Bickel his due process rights related to the CDI and any future actions related thereto because Bickel has not been provided with proper documentation regarding the CDI.

32. Preliminary and permanent injunctive relief is proper to enjoin DE ANG from continuing to interfere with Bickel's ability to obtain new military assignments based on allegations made against him while being denied his due process rights.

33. Preliminary and permanent injunctive relief is proper to enjoin DE ANG from continuing its efforts to withdraw Bickel's federal recognition based on allegations made against him while being denied his due process rights.

34. Preliminary and permanent injunctive relief is proper to enjoin DE ANG from continuing its efforts to obtain a suspension or revocation of Bickel's security clearance based on allegations made against him while being denied his due process rights.

35. Preliminary and permanent injunctive relief is proper to enjoin DE ANG from continuing its efforts to deny Bickel access to his military electronic mail account based on allegations made against him while being denied his due process rights.

36. Preliminary and permanent injunctive relief is proper to enjoin DE ANG from denying Bickel's right to train and report to duty based on allegations made against him while being denied his due process rights.

### COUNT TWO – DOD
### (PRELIMINARY AND PERMANENT INFJUNCTIVE RELIEF)

37. Bickel hereby incorporates each and every paragraph above as if set forth fully herein.

38. Preliminary and permanent injunctive relief is proper to enjoin DoD from suspending or revoking Bickel's security clearance based on LORs issued without DE ANG affording Bickel his due process rights related to the underlying facts included in the LORs. In fact, Bickel has never been provided a copy of the CDI report, including findings and recommendations.

39. Preliminary and permanent injunctive relief is proper to enjoin DoD from suspending or revoking Bickel's security clearance based the contents of the UIF without affording Bickel his due process rights related to the propriety of the contents of the UIF. In fact, Bickel was advised that rebuttal to the contents of the UIF would be futile.

40. Preliminary and permanent injunctive relief is proper to enjoin DoD from suspending or revoking Bickel's security clearance because the allegations made by DE ANG has no nexus to Bickel's patriotism, trustworthiness, or his eligibility to hold a security clearance as defined in DoD 5200.2-R.

WHEREFORE, Plaintiff, Bickel prays for judgment as follows:

    A. In favor of Bickel enjoining DE ANG as set forth above;

    B. In favor of Bickel enjoining DoD from proceeding with suspension or revocation of Bickel's security clearance;

C. For attorneys' fees, expert fees, and other cost incurred in bringing this action; and,

D. For all other relief as this Court may deem just and proper.

*/s/ James D. Abrams*_____
James D. Abrams (0075968), Trial Attorney
jabrams@taftlaw.com
Joseph C. Pickens (0076239)
jpickens@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
65 East State Street, Suite 1000
Columbus, Ohio 43215
Telephone: (614) 221-2838
Facsimile: (614) 221-2007

*Attorneys for Plaintiff*

21968783.6