IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PETER W. BICKEL, | : |
| | : |
| | : Case No. 2:18-cv-00119 |
| Plaintiff, | : |
| | : JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Vascura |
| THE DELAWARE AIR NATIONAL | : |
| GUARD, *et al.*, | : |
| | : |
| Defendants. | : |

**OPINION & ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Motion for Preliminary Injunction (ECF No. 7) and First Amended Complaint For Injunctive Relief (ECF No. 2) ("Motion to Dismiss") (ECF No. 21). For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**.

I. BACKGROUND

A. Factual Background

Plaintiff Peter Bickel is an Ohio licensed doctor of optometry, a Colonel in the Delaware Air National Guard ("DE ANG"), and a reserve of the Air Force. (ECF No. 7-1 at ¶ 2). Col Bickel served in various positions in the Air National Guard and as a reserve of the Air Force for over 29 years. (*Id.*). In 2014, Col Bickel was offered a position as DE ANG's 166th Airlift Wing's Medical Group Commander, which he accepted. (ECF No. 2 at ¶ 10). His first official day as the Medical Group Commander was January 15, 2015. (*Id.*).

During his tenure as Medical Group Commander, Col Bickel frequently engaged his part- and full-time staff by telecommuting through text messaging, telephone, and electronic mail.

1

(ECF No. 7-1 at ¶ 3). Col Bickel contends telecommuting was necessary given his part-time status and the Major General's focus on Officer Performance Reports as a method of improving Wing Readiness. (*Id.*). Col Bickel discussed telecommuting with his immediate supervisor, then Vice Wing Commander, Colonel Donald Bevis. (*Id.* at ¶ 4). Col Bickel and Col Bevis completed the Air National Guard Telecommuting Work Agreement and the Air National Guard Telecommuting Supervisor and Telecommuter Checklist required by Air National Guard Instruction 36-8001 ("ANGI"). (*Id.* at ¶¶ 3-4). Col Bevis orally approved Col Bickel's request to report his time in complete days, accumulating time spent on various days and only reporting when it reached a full eight hour day. (*Id.* at ¶ 4). Col Bickel thus reported his time using an approved spreadsheet and Col Bevis never refused to make a payment because of the manner in which the telecommute time was submitted. (*Id.* at ¶ 5). Col Bickel was often advised, however, that there was no budget for payment, and he then would accumulate telecommute time and re-submit the request when money was available. (*Id.*).

In August of 2016 Col Bevis was replaced by Colonel Robert E. Culcasi. (*Id.* at ¶ 6). Col Culcasi stopped all telecommuting time when he took over, but permitted Col Bickel to be reimbursed for telecommuting time that he had previously submitted. (*Id.*). Col Bickel had accumulated but not submitted additional telecommuting time before Col Culcasi halted telecommuting, and Col Culcasi asked to review that time. Col Bickel has not been paid for that time and has not submitted any additional telecommute time after August of 2016.

On June 1, 2017, Col Culcasi authorized an investigation under his command of Col Bickel's alleged abuse of telework, government owned vehicles, and his position. (ECF No. 21-1 at ¶ 6). This Commander Directed Investigation ("CDI") was conducted from June 1 to July 30, 2017. (*Id.*). Col Bickel initially believed the CDI was directed against a different target and

thought he was a potential witness. (ECF No. 7-1 at ¶ 7). Col Bickel was informed that the CDI was against him on July 12, 2017. (ECF No. 24 at ¶ 3, Ex. A). That month, he was assigned a military defense attorney JAG officer to assist him with the CDI. (ECF No. 7-1 at ¶ 7). On July 24, 2017 Bickel responded to a series of questions relating to the CDI. (ECF No. 24, Ex. B). On July 30, 2017, a Report of Investigation ("ROI") was issued, spanning approximately 400 pages and including sworn statements of eleven witnesses and other supporting documents. (ECF No. 21-1 at ¶¶ 7, 8). Col Bickel contends that he has never seen the ROI, while Defendants assert that the DE ANG Staff Judge Advocate, Lieutenant Colonel Jonathan Wasden, discussed or shared the ROI with four different lawyers representing Col Bickel. (*Compare* ECF No. 23 at 5 *with* ECF No. 27-1 at ¶ 6). In any event, the ROI and CDI file were then reviewed by Lt Co Wasden, who drafted a memorandum recommending that Col Culcasi approve the CDI/ROI findings that Col Bickel (1) did not comply with telework procedures and instruction, and his claim for telework was unreasonable; and (2) violated regulation by using a government owned vehicle in a prohibited manner. (ECF No. 21-1 ¶ 10).

In September of 2017, Col Bickel was asked to meet with Col Culcasi and Lt Co Wasden. (ECF No. 7-1 at ¶ 9). Col Bickel was not represented by counsel at the meeting, and contends that he previously conferred with his assigned JAG counsel who "advised that it was not necessary for assigned JAG counsel to attend because it was likely that an apology for the CDI was going to be offered." (*Id.*). At the meeting, however, Lt Co Wasden delivered two Letters of Reprimand ("LORs"), the first LORs of Col Bickel's career. (*Id.*). The LORs purported to discipline Col Bickel for failure to comply with telework instructions and legal requirements and questioning witnesses about their testimony while the investigation was pending, in violation of a direct order. (ECF No. 21-1 at ¶ 11). Col Bickel signed acknowledgement of receipt of the

LORs, but advised Col Culcasi and Lt Co Wasden that he denied any wrong-doing. (ECF No. 7-1 at ¶ 9).

Col Bickel was given three days to submit a rebuttal to the LORs. (*Id.* at ¶ 10). Alternatively, he was told he could retire to avoid any negative implications from the LORs. (*Id.*). Col Bickel consulted his assigned JAG counsel about rebutting the LORs, and alleges that he was advised that regardless of the reasonableness and adequacy of the rebuttal, Lt Co Wasden had informed the assigned JAG counsel that efforts to rebut the LORs would be futile. (*Id.*). Thereafter, Col Bickel met with Col Culcasi and the Wing's Vice Commander, Colonel Trevor Fulmer, to advise them of what his JAG counsel told him regarding Lt Co Wasden's statement about futility. (*Id.* at ¶ 11). Col Bickel told Col Culcasi and Col Fulmer that he would no longer work with that assigned JAG counsel, and Col Fulmer advised Col Bickel that new counsel would be provided. (*Id.*). Col Bickel also requested an extension of time to submit his rebuttals to the LORs, and was granted an extension to November of 2017. (*Id.*). On September 20, 2017, however, Col Bickel was advised by Col Culcasi that it was Col Bickel's responsibility to obtain new JAG counsel, and that he must submit his rebuttals to the LORs by September 29, 2017. (*Id.* at ¶ 12). By October 3, 2017, Col Bickel informed Col Culcasi that he would not respond to the LORS, based on the advice of civilian counsel. (ECF No. 21-1 at ¶ 14). The LORs and supporting documentation were placed into an Unfavorable Information File ("UIF"). (*Id.* at ¶ 15).

On November 28, 2017, Col Culcasi sent a letter to Col Bickel informing him of Col Culcasi's recommendation that Col Bickel's federal recognition be withdrawn, and that Col Bickel be discharged from the DE ANG for misconduct. (*Id.* at ¶ 16). The letter informed Col Bickel that a board of officers would be convened to determine whether he should be discharged

4

and lose his federal recognition. (*Id.* at Ex. A). The letter further notified Col Bickel that he has the right to consult civilian legal counsel at his own expense, or military legal counsel at no cost, the right to present his case to the board, and the right to submit statements on his own behalf at any time. (*Id.*). After the board makes its determination, the determination must be approved by the Secretary of the Air Force. (*Id.*). If Col Bickel is not satisfied with the decision, he may appeal to an Air Force Discharge Review Board, which is a multi-phase process that includes briefing, oral argument, findings of fact and law, and a final order/decision. (ECF No. 21-1 at ¶¶ 19, 20). To date, a board of officers has not been convened. Col Bickel's mandatory retirement date is June 1, 2019. (ECF No. 7-1 at ¶ 13).

In December of 2018, Col Bickel filed a complaint with the Air Force Inspector General ("AFIG"). (*Id.*). In January of 2018, Col Bickel was notified of DE ANG's intent to recoup amounts paid to him for telecommuting time, totaling $36,984.07. (*Id.* at ¶¶ 12, 14). In the same month, a Security Information File was created and Col Bickel was notified of DE ANG's intent to suspend and ultimately revoke his security clearance. (*Id.*). In February of 2018, Col Bickel's discovered that he was denied access to his military electronic account. (*Id.* at ¶ 12). On February 1, 2018, Col Bickel filed a second complaint with AFIG. (*Id.* at ¶ 14). To date, the AFIG has failed to act. (*Id.* at ¶ 13).

### B. Procedural History

Col Bickel initiated this action on February 14, 2018 against DE ANG, Major General Carol A Timmons in her official capacity as the Adjutant General of the DE ANG, and the United States Department of Defense (DoD), James N. Mattis, in his official capacity as the United States Secretary of Defense. (ECF No. 1). On February 16, Col Bickel filed an Amended

Complaint alleging violations of his constitutional due process rights and seeking injunctive relief to:

- Enjoin DE ANG from continuing to deprive Bickel of his means of livelihood by denying Bickel his due process rights related to the CDI and any future actions related thereto because Bickel has not been provided with proper documentation regarding the CDI

- Enjoin DE ANG from continuing to interfere with Bickel's ability to obtain new military assignments based on allegations made against him while denied his due process rights

- Enjoin DE ANG from depriving Bickel of his means of livelihood in its continuing efforts to withdraw Bickel's federal recognition based on allegations made against him while being denied his due process rights

- Enjoin DE ANG from depriving Bickel of his means of livelihood in its continuing its efforts to obtain a suspension or revocation of Bickel's security clearance based on allegations made against him while being denied his due process rights

- Enjoin DE ANG from depriving Bickel of his means of livelihood by its continuing its its efforts to den Bickel access to his military electronic mail account based on allegations made against him while being denied his due process rights

- Enjoin DE ANG from depriving Bickel of his means of livelihood by denying Bickel's right to train and report to duty based on allegations made against him while being denied his due process rights

- Enjoin DoD from suspending or revoking Bickel's security clearance.

(ECF No. 2). On February 28, 2018, Col Bickel filed a Motion for a Preliminary Injunction, seeking to enjoin Defendants from:

1. Continuing to deprive Bickel of his right to his liberty to pursue his profession and his means of livelihood without due process by including LORs resulting principally from a CDI about which Bickel has never had an opportunity to review to be heard, in a specially created UIF;

2. Depriving Bickel of certain retirement benefits without due process as a results of efforts to withdraw his federal recognition based on the LORs, resulting from the CDI, that require an Officer's board to be convened when convening a board and hearing the matter will not realistically take place before Bickel's mandatory separation date;

3. Depriving Bickel of his right to his liberty to pursue his profession and his means of livelihood without due process by initiating actions to suspend or revoke Bickel's security clearance as a result of placing the LORs in the UIF;

4. Depriving Bickel of his liberty to pursue his profession and his means of livelihood without due process by initiating actions to suspend or revoke Bickel's security clearance based on allegations that have no nexus to Bickel's patriotism, trustworthiness, or his eligibility to hold a security clearance as defined in DoD 5200.2-R

5. Depriving Bickel of his liberty to pursue his profession and his means of livelihood by denying access to his military electronic mail account which denies Bickel access to records required to obtain a new billet without due process as a result of the UIF and actions taken to suspend or revoke Bickel's security clearance

6. Depriving Bickel of his liberty to pursue his profession and his means of livelihood as a practicing civilian optometrist in Ohio without due process as a result of the UIF and the actions taken to suspend or revoke Bickel's security clearance; and,

7. Depriving Bickel of his liberty to pursue his profession and his means of livelihood as well as his property rights in his retirement benefits without due process by denying Bickel the ability to train and report to duty based on the CDI and UIF.

(ECF No. 7). The Preliminary Injunction Hearing is currently scheduled for May 25, 2018. (ECF No. 22). On March 28, 2018, Defendants filed a Motion to Dismiss Plaintiff's Motion for Preliminary Injunction (ECF No. 7) and First Amended Complaint for Injunctive Relief (ECF No. 2). (ECF No. 21). The Motion to Dismiss is fully briefed and ripe for decision.

## II. STANDARD OF REVIEW

Defendants bring their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and Rule 12(b)(1) for lack of subject matter jurisdiction. "A motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction must be considered before a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *HSBC Mortg. Servs., Inc. v. Horn*, No. 1:07CV699, 2008 WL 4449497, at *1 (S.D. Ohio Sept. 30, 2008). This order is necessary because "the Rule 12(b)(6) challenge becomes moot if this Court lacks subject matter jurisdiction." *Whitestone Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 2:15-CV-962, 2016 WL 1117595, at *2 (S.D. Ohio Mar. 21, 2016).

7

In considering motions to dismiss for lack of subject matter jurisdiction, "[t]he Sixth Circuit has distinguished between facial and factual attacks." *Id.* Facial challenges merely question the sufficiency of the pleading, whereas factual attacks challenge the factual existence of subject matter jurisdiction. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). In reviewing a facial challenge, the trial court takes the allegations as true and employs standards similar to 12(b)(6) safeguards. *Ohio Nat. Life Ins. Co. v. U.S.,* 922 F.2d 320, 325 (6th Cir.1990). In reviewing a factual challenge, no presumptive truthfulness applies and the trial court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). In considering motions to dismiss for lack of subject matter jurisdiction, courts may look to evidence outside the pleadings. *Nichols v. Muskingum College,* 318 F.3d 674, 677 (6th Cir.2003).

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). The Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In short, a complaint's factual allegations "must be enough to raise a right to relief

above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### III. ANALYSIS

Defendants argue that this Court lacks subject matter jurisdiction because Col Bickel's claims are barred by the *Feres* doctrine. Col Bickel contends that an exception[1] to the *Feres* doctrine, as articulated in *Mindes v. Seaman*, 453 F. 2d 197 (5th Cir. 1971), applies. In *Feres v. United States*, the Supreme Court held that the "Government is not liable under the Federal Torts Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. 135, 146 (1950). The doctrine is premised on three underlying rationales: "(1) the peculiar and special relationship of the soldier to his superiors; (2) the effects of the maintenance of such suits on discipline; and (3) the extreme results that might obtain if suits under the FTCA were allowed for negligent orders given or negligent acts committed in the course of military duty." *Mackey v. United States*, 226 F.3d 773, 775 (6th Cir. 2000) (citing *United States v. Shearer*, 473 U.S. 52, 57 (1985)); *see also United States v. Johnson*, 481 U.S. 681 (explaining the rationales underlying *Feres* as (1) the "distinctively federal in character" relationship between the Government and members of the armed forces; (2) the existence of generous statutory disability and death benefits for servicemen; and (3) the fact that the types of claims implicated by the doctrine, if permitted, "would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.").

Since *Feres*, the Supreme Court has expanded the doctrine to cover more than just FTCA claims. Of relevance here, the Court has held that the *Feres* doctrine can bar constitutional

---

[1] Col Bickel characterizes *Mindes* as an exception to *Feres* and Defendants do not object. Given this Court's holding discussed below, it is not necessary for the Court to examine the interplay between the two doctrines.

9

claims. In *Chappell v. Wallace*, the Supreme Court held that the *Feres* doctrine bars *Bivens*-type actions where enlisted military personnel seek to recover damages from a superior officer for alleged constitutional violations. 462 U.S. 296, 305 (1983). *Chappell*'s holding has been interpreted to bar all *Bivens* remedies for injuries that "arise out of or are in the course of activity incident to service." *United States v. Stanley*, 483 U.S. 669, 683–84 (1987). Circuits are split over the issue of whether *Feres* bars claims for injunctive relief. *Compare Watson v. Arkansas Nat. Guard*, 886 F.2d 1004, 1009 (8th Cir. 1989) (finding that *Feres* and *Chappell* bar suits for injunctive relief and reasoning that "[t]he judiciary does not acquire competence . . . merely because the remedy sought is an injunction rather than damages") *with Wilkins v. United States*, 279 F.3d 782, 787 (9th Cir. 2002) (finding that "*Feres* applies only to money damages" because "[t]o conclude otherwise would leave military personnel without judicial recourse to challenge unconstitutional policies."). The Sixth Circuit has not explicitly ruled on this issue.[2]

This Court need not determine whether the *Feres* doctrine applies to bar the instant action, because even under the *Mindes* test advocated by Col Bickel, Col Bickel's claims are nonreveiwable. In *Mindes*, the Fifth Circuit articulated a test for determining the reviewability of particular military decisions. 452 F.3d at 201. The court first held that courts "should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Id.* If those two

---

[2] In an unpublished decision, the Sixth Circuit affirmed the judgment of the district court dismissing Plaintiff's complaint brought under *Bivens* and 42 U.S.C. § 1983 that sought both damages and injunctive relief for his discharge from the Rhode Island Army Reserve National Guard, which he alleged deprived him of his constitutional rights. *Tracy v. Nat'l Guard Chief*, 76 F.3d 380 (Table) (6th Cir. 1996). The Court held that "Plaintiff's claims clearly are barred under the doctrine enunciated in *Feres*," suggesting that the Sixth Circuit would join the majority of circuits in holding that *Feres* applies to claims for injunctive relief as well.

prerequisites are satisfied, *Mindes* then directs courts to weigh the following factors in order to determine if the case is reviewable:

1. The nature and strength of the plaintiff's challenge to the military determination;

2. The potential injury to the plaintiff if review is refused;

3. The type and degree of anticipated interference with the military function; and

4. The extent to which the exercise of military expertise or discretion is involved.

*Id.* at 201-202. The Sixth Circuit explicitly adopted the *Mindes* test as the proper framework for determining the justiciability of claims involving internal military decisions in *Harkness v. Secretary of Navy*, 858 F.3d 437 (6th Cir 2017).

In *Harkness*, a former Navy chaplain alleged that he was denied various promotions and duty assignments in violation of the First Amendment. *Id.* at 443. The district court dismissed his claim as non-justiciable. *Id.* In reviewing the appeal, the Sixth Circuit first noted that "courts are generally reluctant to review claims involving military duty assignments." *Id.* The court stated that "[s]everal justifications for this rule exist: lack of expertise, deference to the unique role of the military in our constitutional structure, and the practical difficulties that would arise if every military duty assignment was open to judicial review." *Id.* The court then held that "*Mindes* provides the proper framework for analyzing the justiciability of [plaintiff's] First Amendment retaliation claim " thus explicitly adopting the *Mindes* test and joining "other circuits [that] have adopted this test for determining the justiciability of claims involving internal military decisions." *Id.* at 444. The *Harkness* Court found that no dispute existed as to whether plaintiff met the two threshold requirements, and went on to analyze the four *Mindes* factors, ultimately finding that plaintiff's claims were nonjusticiable. *Id.*

11

Unlike in *Harnkess*, the Court need not even reach the four *Mindes* factors here because the two perquisites are not met. While Col Bickel has alleged deprivation of a constitutional right, he has not exhausted his available intraservice corrective measures. A board of officers has not yet convened to determine whether Col Bickel's federal recognition should be withdrawn or whether he be discharged from the DE ANG for misconduct. (ECF No. 21-1 at ¶ 16; Ex. A); *see also* Air Force Instruction 51-62 ("AFI") available at www.e-Publishing.af.mil (providing instructions for conducting boards of officers proceedings). After the board of officers deliberates, its decision must be approved by the Secretary of the Air Force. (*Id.* at Ex. A). And then Col Bickel may appeal to an Air Force Discharge Review Board that has the discretionary authority to review discharges. (ECF No. 23 at 6-7); 32 CFR §§ 865.103, 105.

Given all of the remaining steps in the military process, it is clear that Col Bickel has not yet exhausted his administrative remedies. His claims therefore fail. *See, e.g.*, *Montgomery v. Sanders*, No. 3:07-CV-470, 2008 WL 4546262, at *5 (S.D. Ohio Aug. 18, 2008) (dismissing plaintiff's claim when he failed to exhaust internal military review processes including the Air Force Board for the Correction of Military Records and the Personnel Security Appeals Board); *Heidman v. United States*, 414 F. Supp. 47, 49 (N.D. Ohio 1976) ("Since further administrative remedies are available to plaintiff, the Court concludes that the Motion for Preliminary Injunction must be denied and that the action is dismissed without prejudice*."); Fay v. Arizona Army Nat. Guard*, No. CV-12-1079-PHX-DGC, 2012 WL 4478811, at *3 (D. Ariz. Sept. 28, 2012) ("Plaintiff has not exhausted his nonjudicial remedies, nor has he demonstrated that his case should be exempted from the exhaustion requirement. Accordingly, he has failed to satisfy the second element of the *Mindes* test . . . and the Court need not consider the additional factors."); *see also Vaughan v. Kentucky Army Nat. Guard*, No. CIV.A. 3:12-35-DCR, 2013 WL

211075, at *6 (E.D. Ky. Jan. 18, 2013) (finding plaintiff's claim not justiciable because "it hing[ed] on hypothetical future events", where plaintiff's security clearance was suspended, but not yet permanently revoked, nor had his federal recognition been finally withdrawn).

Col Bickel contends he need not exhaust because it would be futile. (ECF No. 23 at 19). He points to his JAG officer's statement that any challenges to rebut the LORs would be futile. (*Id.*). The Court is not persuaded that a statement by one military officer about one step in the military process renders the entire process futile. While one officer may have believed rebutting the LORs would have been futile, there is nothing to suggest that the board of officers hearing would be futile. The relevant AFI provides that it is "the board's duty to ascertain and consider the evidence on all sides of each issue, thoroughly and impartially, and to make findings and recommendations that are warranted by the facts and that comply with the instruction of the appointing authority." This Court has no reason to believe that the board, once convened, will not fulfill its responsibility of being impartial and give Col Bickel a fair hearing.

Col Bickel next argues that an exception to the exhaustion requirement applies here because the status quo under the administrative decision pending review would itself constitute a hardship or leave him in an emergency situation. In support of this contention, Col Bickel states that the only relief he is requesting from this Court is an injunction allowing him to train and receive retirement credits while he waits for the military appeals process to conclude. (ECF No. 23 at 7, 11). Col Bickel argues that the board will likely not be convened before his mandatory retirement date and if this Court does not grant him such an injunction his full maximum retirement benefits will be lost. (*Id.* at 11). In response, Defendants contend if all Col Bickel seeks is the ability to train, his request is moot because there is currently no prohibition on Col Bickel attending drills or training. (ECF No. 27-1 at ¶ 14). Given Defendants' sworn affidavit

13

stating Col Bickel is allowed to participate in drills and trainings, the Court finds that the status quo will not constitute a hardship or leave Col Bickel in an emergency situation. *See Layman v. Harvey*, No. 8:05-CV-2208-T24EAJ, 2007 WL 430678, at *7 (M.D. Fla. Feb. 5, 2007) (finding plaintiff failed to exhaust his administrative remedies despite his contention that "he will not receive a determination from the Board before his activation and deployment").

Finally, Col Bickel contends that he meets the exception to exhaustion that courts find when "the complaint involved a matter of law only and did not require or involve application of military expertise." *Seepe v. Dep't of the Navy*, 518 F.2d 760, 762 (6th Cir. 1975). This argument is unpersuasive. As in the *Seepe* case Col Bickel cites, the court is "confronted by a mixed question of fact and law. In this case the service's development of a factual record and its interpretation of the law as applied to the facts may well prove of value to the reviewing court." *Id.* at 764.

Given the Supreme Court's repeated guidance that "special factors counsel[] hesitation," before entertaining military suits—namely "the unique disciplinary structure of the Military Establishment and Congress' activity in the field"—this Court dismisses Col Bickel's claims without prejudice to afford him the opportunity to exhaust all intraservice remedies. *United States v. Stanley*, 483 U.S. 669, 683–84 (1987).

## IV. CONCLUSION

For these reasons, Defendants' Motion to Dismiss (ECF No. 21) is hereby **GRANTED**. The Preliminary Injunction hearing scheduled for May 25, 2018 is therefore **VACATED** and the above-referenced matter is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

                                                /s/ Algenon L. Marbley
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**DATED: May 11, 2018**